My name is Kent Walker from the law firm of Cooley Goddard on behalf of the appellant Mr. Nguyen. I wanted to address, there's two issues I think before this court. The first is the issue of exhaustion, the second is the appellant's right to an evidentiary hearing. The first issue is the only one that's been challenged by the state, the issue of exhaustion. I believe the common thread as to both issues and significantly the exhaustion issues is the issue that's been raised and it's before this court which is whether Mr. Nguyen's counsel could have been effective when he made no investigation of the state's DNA report on the alleged rape victim. Which significantly that DNA test showed that sperm DNA and non-sperm DNA was found on the victim from two sources, neither of which were from Mr. Nguyen, the appellant. I regard that discovery as very helpful to your client. Would it not be that it excluded him from, at least in terms of the semen that was tested, of being liable in any way? Yes, Your Honor. A defendant accused of rape where the victim has had a DNA test conducted by the state which found none of his sperm, none of his non-sperm DNA and yet more. So it makes me puzzled, given that very, very good development in terms of evidence, why did he plead? He pled because, in part, his counsel was ineffective in representing him in that counsel did not take this very significant evidence and investigate it. To find out who was this sperm from, from the unidentified source, what was the evidence at trial going to be as to whether or not the victim was going to say that her attacker ejaculated? What was the source of the non-sperm DNA? Was there anything in the record about whether he consulted an expert who would testify as to the consequences of what it meant that there was no sperm and no non-sperm evidence on the test? As Judge O'Scanlan says, that sounds like a very fine development, but what kind of testimony would it have led to? Would an expert have said that had he been the participant in the rape that there would have been some evidence, either sperm or non-sperm? Yes, as we argued in our papers, one avenue that such an expert could explore would be even if the victim said that there was no ejaculation, that an attacker who had penetration would leave DNA evidence such as the precursor to the sperm. And an expert could testify as to what you would expect to find when two people come together in such an intimate union in terms of DNA evidence that would be left behind. My understanding from the report was that it was not only that there was no sperm or the pre-sperm, but there was other kinds of physical evidence that would normally exist from that type of contact other than sperm was not present. But it's hard for laymen to understand what that means. Does that mean there's a 50% chance that he was not in contact with it? Does it mean it's a 1% chance? Is there anything in the record that shows he did any investigating of that type to explore with experts what the DNA report signified? No, I assume that you're referring to the defendant at that time's counsel. There is nothing of record that he did explore such things. And the submission to the court is that there was no investigation made of this DNA test result. Of the consequences of significance of it? Yes, of all facts, small and large, that stem from such evidence in a rape case that it was not investigated at all. And that is why we ultimately seek an evidentiary hearing. Is there any factual issues that would come before the district judge on an evidentiary hearing in this case? Or would he be limited to deciding legal issues? Yes, there are factual issues. That would be the time that the appellant would be offering proof that counsel did not conduct an adequate investigation. That would be pursuant to the evidentiary hearing. That would be evidence that he could compel through testimony of the attorney, through testimony of experts, through testimony of other witnesses potentially, such as the mother, such as the police investigator, such as the lab investigators. I assume that at this point we have only the defendant's assertion that there was no investigation conducted. That if there were an evidentiary hearing, the lawyer might come in and say, that's not so. I did conduct an investigation. I think hypothetically that is possible, but that's the point of asking for an evidentiary hearing. This defendant appellant... But that means, in effect, that the lawyer has not admitted that he did nothing. There's no evidence in the record either way. The evidence is that there's no evidence that any investigation was made. Okay. And again, this is an appellant who has been pro se up to this point, has been in prison up to this point, has no resources, and hasn't had counsel up to this point. And we're asking that he at least be entitled to an evidentiary hearing to develop the record as to his claim that there was no investigation. Do you want to save the remaining time for rebuttal? Yes, Your Honor. Good morning, Your Honors. May it please the Court. Robert Foster, Supervising Deputy Attorney General for Respondent. I think counsel for appellant is putting the cart before the horse. I think you have to go back and look, how was this claim raised in the state court? How was it presented in the district court? Your only argument on appeal is exhaustion. No, Your Honor. Isn't that all you discussed in your brief? We also in the original brief pointed out that he had, that there was no basis, that at no time had he in the lower court made the factual allegation that counsel had failed to investigate, other than his own self-serving statement. The California Court of Appeal rejected that, and that's at 153 and 154 of the excerpt of the record. The magistrate judge, when he ruled on it, said all you've done is allege counsel failed to investigate. You've offered no proof other than your own self-serving, unsupported claim. Well, that's something that an evidentiary hearing would give him an opportunity to flesh out. I mean, how else is he supposed to prove the lack of investigation? You could have done it with a letter or an affidavit from trial counsel, letter or an affidavit from a precipient witness, the billing records that counsel submitted to the state court for his time. I mean, this Court has repeatedly held that simply conclusory allegations are not enough to justify an evidentiary hearing. He shouldn't be able to go through the state court making an unsupported allegation to the California Supreme Court with the unsupported allegation, to the district court with the unsupported allegation, and then go, I need an evidentiary hearing to prove that. You need more of a showing. And the United States Supreme Court has indicated in a number of cases that the self-serving affidavit is not enough. So he isn't entitled to it now. Go back and look. And I think it's just as so scandalous. It doesn't really matter, I suppose, whether he's innocent or not, does it? Well, the issue is whether or not under AEDPA. That means the answer is yes. No, Your Honor, it does not. The answer is if he's entitled to a hearing, it's covered by AEDPA. Nor does it matter that he didn't have a lawyer, he was sitting in prison, and it was not very easy for him to do all the things you're talking about. That's irrelevant. It's irrelevant that he's innocent. All that is relevant is if he didn't produce affidavits. The question is whether he's entitled to an evidentiary hearing. Now, if he's entitled to an evidentiary hearing, Your Honor, then every single appellant is. Every single petitioner is, because there's no proof. This Court has repeatedly said conclusory allegations are not enough. We have one conclusory allegation with no details at all that counsel failed to investigate. What would he have to do to get over that threshold? I think there are any number of ways to show that he could do it. For example, in the Riley case that appellant has cited to this Court, he produced affidavits showing that the counsel had not investigated and he produced an affidavit from the witness showing what the witness would have testified to have called upon. We don't have any of that. I think, as I said to the question from Justice Reinhart earlier, statements made to the family, statements made to contemporaries, statements made in court, an affidavit from counsel. There's no indication at any time that this petitioner has made any effort to get anything from his trial counsel about it. We see all the time federal habeas cases in which there is a letter or an affidavit or something from counsel. All we have from this appellant is a statement over and over again, my counsel didn't investigate it, and nothing more. That should not be enough to trigger an evidentiary hearing. Moreover, I don't think it's an evidentiary hearing because these claims are unexhausted. If you look at the excerpt of the record of 63, the magistrate judge points out, when he went to the California state courts, he just kept talking about medical reports. He never submitted the report. He never talked about DNA. It wasn't until he got to the federal court that suddenly the report is produced and we're suddenly talking about DNA results. The cases talk about the fact that you have to give the California Supreme Court a reasonable opportunity to evaluate the claim. When you said the California Supreme Court, it's a medical report, and then when you get to the district court for the first time, you supply the report and it's a DNA report. I think that that's an unexhausted claim. What was the status of the DNA test while this case was going through the state system? The DNA test, according to its date, had been completed and was in the possession of defendant and his attorney. He had it. He had access to it. Of course, this was pre-sentencing, too, pre-plea. Yes, but the first habeas in the state court of appeal was post-conviction. He never presented it to the court of appeal. He never presented it to the California Supreme Court. And it's like, you know, pulling a rabbit out of your hat when you get to the federal district court and go, oh, by the way, here it is. It's a DNA report. There is no way on this record to conclude that the California Supreme Court had a reasonable opportunity to consider this federal claim on this ground. So his claims are barred. Your complaint is that he instead of saying that the California Supreme Court DNA report, he said medical report. He said medical report with no specificity beyond that. He was pro pair, right? He was, Your Honor. But he kept talking about. He forfeited his rights because instead of saying DNA report, he wrote medical report. He forfeited his rights because he referred to a medical report. He had the report and did not submit it to the California Supreme Court. He has failed to exhaust that claim. Did the California Supreme Court say you failed to exhaust the claim? No, Your Honor. It denied the habeas petition. If you look through to the last reason decision. You treat that not as a procedural denial, right, but a denial on the merit. Yes, Your Honor. And if you look through to the last reason decision, that's the California Court of Appeal at 153 and 154 of the excerpt of the record. He simply talked about vague, unspecified medical reports. How can the California Supreme Court consider the impact of that report if it doesn't have it? How can it consider the impact if it doesn't know it's about DNA? By calling for an evidentiary hearing. That's how it can do it. It has the right to ask for an evidentiary hearing. It could have, Your Honor, but he didn't make a sufficient showing by simply referring to medical reports that he was due an evidentiary hearing in the state court. Unless the Court has any further help. Yes, Your Honor. What makes the case hard for me is that it is a little difficult to understand the guilty plea and to read the colloquy that accompanied the guilty plea. I've rarely seen a defendant whose arm appears to have been twisted harder than this one, just based on the record, with the results of the DNA report. It's a little hard to figure out why a defense attorney couldn't have made a defense out of that or pursue it somewhat further than this attorney is at least alleged to have done. Well, I think one of the things I want to point out, Your Honor, is one, she never said he ejaculated. Two, under California law, it doesn't matter because the slightest touching is sufficient. And three, there's no showing that she used the towel to wipe herself off as the petitioner has implied. If you recall, at the time of the rape, she testified she was nursing her baby. She may well have been using the towel. She was 16 years old and had a four-month-old baby. Yes. She'd had previous relations with at least two people based on the DNA testing, neither of which was defendant. Yes. That by itself gives great basis for a defense and great motivation that can be attributed to her testimony and her claim of rape, which at first was a call that didn't identify defendant even though she knew who defendant was. I mean, that by itself is just a scratch on my head and said, if you can't get reasonable doubt out of that, you're not trying very hard. There may have been other evidence. I clearly accept that. But the facts here are very peculiar and put together with a guilty plea, which seems to have been, as I say, arm-twisting at its finest. Doesn't that bit of background give you some sense that something strange was going on here? Not necessarily, Your Honor. First off, petitioners never claimed he was forced into the plea. All he's ever claimed was had he known the results of the medical test, he wouldn't have pled. Well, when I went through all the filings in state court for exhaustion, that seems to be mostly what he was saying. I didn't want to do this. I didn't do it. But they said I'd never see my family again. I get 60 years. So and then you read the record of what happened. It's pretty clear he was not embracing this plea with any kind of enthusiasm. Well, I don't think I would agree it was not enthusiastic, but I still think it was constitutionally adequate. But his complaint to the federal district court and to this court was that counsel failed to investigate. He didn't know about the DNA report. And had he known, he would not have pled. Well, you know, there is some inconsistency. But it's clear what he was saying to the state court where you say he didn't exhaust. I want to make sure we're talking about the same thing. The document I have says that he told the states that he told his attorney of the medical report that was taken on the victim, which proved negative for having any of his sperm, would prove his innocence. Then, as he says, his attorney told him it didn't matter. He was still going to get 60 years and told him to plead. Now, what you say is he would have raised it had he said instead of medical report, had he said DNA report. Had he said DNA report and he said he submitted a copy of that report to the state courts. It's unclear at that point. If you said there's a medical report showing. What state requirement is there that you have to submit the actual report instead of simply stating that there is such a report? I think that the cases that say you have to give a full and fair opportunity for the California Supreme Court to resolve the legal and factual issues. It is far. When you simply say there's some kind of a medical report without specifying, without giving any clue, that's not enough to exhaust. OK. Thank you. Unless the court has any further questions, we would submit. Thank you. Case just started. Next case on the calendar for our argument is Cagley versus Duncan. Philip Bronson for appellant Cagley.
judges: Reinhardt, O'scannlain, Clifton